Good morning. My name is Sarah Curry and I represent Michael Woods. Bill Taffanetti for the people of the state of Illinois. It's the only case of the day. Each side has 15 minutes. Ms. Curry will have some extra time to reply to the arguments. We don't look at our watches, but we're familiar with the facts of the case and pertinent portions of the record. So we would appreciate it if you could get to your strongest points first. Anytime you're ready. Good morning. Michael Woods was charged with armed robbery and felony murder. He pled not guilty and he hired a private attorney to represent him. He proceeded to a jury trial wherein defense counsel immediately conceded his guilt to the armed robbery, which was in essence a concession to the guilt for felony. You didn't plead him out on that, but you say conceded. The issue still went to the jury whether or not he was guilty of armed robbery. Certainly, but he admitted in opening statement that he admitted his participation in the armed robbery, which was in essence an admission to the participation in the felony murder because the jury was only left with a choice to disregard the law in order to find him not guilty of felony murder. Under these circumstances, defense counsel failed to subject the prosecution's case to any meaningful adversarial testing and prejudice must be presumed. What constitutes, in your opinion, under the facts of this case, subjecting the prosecution's case to serious adversarial testing? Well, defense counsel admitted Mr. Woods' participation in the armed robbery, relieving the state of its burden of proof of all the elements of that offense. Is that by taking the tact that he took in admitting, well, he participated in the armed robbery, but, you know, he didn't cause the death of his co-felon. It was the cops that did that by excessive force or whatever the argument was. So is that, in your opinion, by doing that, it nullified everything else that his defense attorney did in putting on a defense? Yes. The defense he waged to felony murder was an unlawful defense. And by defense counsel's own admission, his strategy was jury nullification, which is an invalid defense. It's a defense that would require the jury to ignore the law. I guess my question is more narrow. Are you saying that by choosing what we now know to be a losing strategy, it nullified everything else that he did to test, to subject the case, the state's case to serious adversarial testing? In this case, yes, because it's not only that he argued jury nullification, but in conjunction he admitted the defendant's guilt to both offenses. So you have an admission as to the elements of the offenses. How do you compare this case to the cases where the Supreme Court said, well, there was no serious adversarial testing because the defense, in fact, didn't put on a defense at all, didn't really question the witnesses or anything of that nature? That didn't occur in this case, did it? Well, all of those cases are distinguishable. The four cases relied on by the state most heavily, Gannis, Shatner, Nieves, and Bloomingberg are all distinguishable on several factors. But most importantly, in each of those cases, the defendant gave a statement. In that case, the defendant confessed as well, just the state chose not to use it until he testified or held it back. Well, that evidence was not before the jury, and for some reason that evidence was excluded. It was not admissible unless Mr. Woods decided to testify, which he did not. That's the reason that his defense lawyer decided that he wasn't going to use the defense of withdrawal from the participation in the crime because the state was just laying in wait, waiting to put his confession in evidence. According to what I've read in your briefs and in the record, wouldn't that have contradicted the defense that he would have offered in terms of withdrawal? There was no evidence of withdrawal in the facts of this case, was there? Well, we don't know exactly what Mr. Woods' theory of withdrawal was. But defense counsel said- Well, we know what constitutes withdrawal under the law. And so you would have to apply the facts of this case to the test that we know established case law tells us what constitutes withdrawal. And looking at the facts of this case, I'm not sure that I saw anything that wouldn't have constituted that. But defense, it wasn't one or the other. It wasn't jury nullification. It wasn't admit everything and argue an invalid defense or withdrawal. There were other options. Defense counsel- You're a defense lawyer. You're very familiar with the facts of the case. You wrote the brief. You're saying the trial counsel, who was stuck with an armed robber, who was seen actually entering the place by Chicago police officers who were observing him enter, locking the doors, sticking the people up. The people are alive inside, thank God. They identify him. He's caught with a gun and proceeds are found inside. His partner is found shot just directly outside. You're the trial lawyer today. What defenses should have been done? What would avoid an ineffective assistance of argument after your client gets tagged and gets his 20 years? I will concede that the evidence was overwhelming. However, he hired this attorney who pled guilty- How do you prevail? How do you prevail? Under chronic and hater- I really appreciate it. I really do. I'm not kidding. It's impossible to win this case. It is overwhelming. Nobody on earth can win this case. Clarence Darrow can't win this case. How do you prevail? Under chronic and hattery, just because the evidence is overwhelming, that does not mean that your defense attorney can come in and simply admit to the offenses. When you've pled guilty, you've decided that you want to go to trial. You've decided that you want the state to be held to its burden of proof. Defense counsel walked in here and said he committed the armed robbery, which all the jury then has to do is look at the felony murder instruction, and they have no choice but to find him guilty of felony murder. And wasn't that true in Gannis where they argued compulsion, which by law you're not allowed to raise. You can't raise a compulsion defense. I'd suggest to you if you looked at Burnham, the appellate court case following Hudson, the Supreme Court case, where they talk about felony murder in Illinois. We're the only state in the union that has the idea that if somebody participates in a certain list of felonies, that they are guilty if their partner is killed, if a bystander is killed. In this case, the policeman killed his co-defendant, and this man must be convicted under Illinois law of the murder of his co-defendant, who he didn't want shot. We're the only state that does that. So I'd suggest if you look at these cases, foreseeability is not a bad argument. It's really his only hope. The fact he took a jury, I would think is kind of stupid, because juries won't, they don't care about this. They know these guys are armed robbers. But a bench, a foreseeability, Hudson says to have felony murder, you have to foreseeability. And wasn't this the argument of defense counsel? It was unforeseeable that going outside, the policeman would shoot an unarmed armed robber because the gun has found some distance from him. Right? That was the argument, was it not? Right. But by defense counsel's own admission, he knew the case. Well, he knew that his argument was invalid. He knew that based on the law. You can actually argue it. Again, it's kind of tricky with a jury because they don't understand these things. But it's not invalid. You have to prove foreseeability. The state has to prove it. And again, he did cross-examine the state witnesses, right? His theory was the police were liars. The police murdered the victim, in this case the armed robber, right? That was his argument, is that the police are murderers, that they lied about this. There was no cause to shoot an unarmed fellow, right? Whether he was armed or not, it doesn't matter. It's a chain of events set into place by the defendant, and the shooting is a direct and foreseeable result. There's no scenario under any of these. So what else could he have done? He could have not admitted an opening statement that his client was guilty. He could have challenged the witnesses as they testified. He could have indirectly argued and hoped for jury nullification. Jury nullification is a possibility. I argue that this case is distinguishable from Gannis, from other cases. In Gannis, defense counsel did not admit to anything. Well, having sat up here for 15 years and been a prosecutor for 16, surprisingly enough, not all defense attorneys think that statements are that strong. Surprisingly enough, a lot of defense attorneys actually claim torture. They claim lack of rights. They claim even if he said it, he didn't mean it. You know, not all confession cases result in pleas. Indeed, lots of them, lots and lots of them go to trial, including the ones on videotapes. They go to trial all the time. And the Illinois Supreme Court in Gannis, Shatner, and Nieves said it wasn't defense counsel's actions in those cases that resulted in the conviction. It was the defendant's own statement. And in several of those cases, his testimony in support of his statement. And that is how they distinguish Chandler by saying, right, in Gannis, and in Shatner specifically, saying in Chandler, which you rely on, and it's not your only case, in Chandler we pointed out that that defense attorney never cross-examined anybody, didn't call anybody. It is just a horrible job. And that's why we reversed. It wasn't based on the fact of a lack of defense, because there is no defense. So in Shatner, they had taken it a step further, saying we reversed. Here they talk about Chandler at whatever page it would be, 148, 147, saying that ineffective assistance did not rest exclusively on Chandler's counsel's alleged failure to develop a theory of innocence. Rather, the Chandler court further observed that defense counsel's performance was deficient because he failed to cross-examine several key prosecution witnesses, cross-examine others in an extremely conclusory manner, called no witnesses to testify, even though it didn't call the defendant to testify, even though he assured the jury during open argument he would be calling the defendant to testify. Well, and in Hattery, the court talked about the lack of cross-examination, lack of presenting evidence or closing argument. However, it has to be meaningful. I mean, you can't get up and cross-examination about what their dog did that morning. And how many times has a court of review in a reported decision followed Hattery other than Chandler? So Chandler follows Hattery and says this is horribly ineffective to the point where, again, for lack of effort as opposed to stupid things, you know, defense lawyers fronting murders they didn't have to front or were told they were left out. And how many times have they done it?  And Woods is exactly like this case. He rests on all fours with this case. Defense counsel made an admission to the theft, which was, for all intents and purposes, an admission to the burglary, which was contradictory to the defendant's plea of not guilty and his testimony, and relied on a jury ruling. That was an Illinois Health Board case from 1986? Correct. Which is still valid. Well, it sure can be. No, it can't be. And what was the other one you had? People v. Morris, which is the case where defense counsel went one step further and brought in the inadmissible evidence of the prior murder.  Well, that's different than Hattery, where the judge says, whatever you do, State, don't bring up the fact that you murdered somebody else. But Hattery... That's the argument of defense. By the way, my client killed somebody else. There was a purpose for the decision in Hattery, and Hattery is still good luck. Yes, the courts have shied away from it, but in every single other case that's distinguishing Hattery, all of those defendants gave statements. Johnson and Gannis and Shatner and Nevis and Bloomingbrook, they all gave a statement. And the Illinois Supreme Court specifically pointed out that that was critical in those cases, that that's a critical distinction, that the evidence was much worse, that defense counsel had his clients admitting to these things. Also in those cases, defense counsel did not admit to the offenses at any point during the trial. Well, here you have defense counsel standing up and immediately admitting guilt. Guns, proceeds, he's caught going inside, coming out, trying to get his partner to come out, much to his chagrin, and guns recovered, proceeds recovered. He's caught inside. But his... That's not better than a statement? His... Why is that not better than a statement? Because it's the defendant's own words. Okay, and I've argued that a lot of times. And I've had juries not buy that. And public courts were famous for throwing out confessions, for saying, so what, corpus delicti. We can think of a thousand, a couple of reasons to get around. With a statement, you already have struggled the jury with a plea of not guilty and his statement that I'm actually guilty. Here, all you have, I mean, defense counsel could have just rested on the state living up to its burden of proof beyond a reasonable doubt. The jury, the state had no burden in this case. It is a case, I'll be honest, I don't recall if it was cited by the state in this case, but to flavor them up now on the state side, Kenyatta White, from earlier this summer in our Supreme Court, where the Supreme Court held that once you go, when it's alleged ineffective assistance of counsel, once you say that the evidence is overwhelming, that ends the analysis. There's no need to address anything other than that. Under Hattery? And Cronick? Well, again, you go back to Cronick, and Cronick means it's like the guy's asleep the whole time. So Cronick is actually much worse than Hattery. And I understand that he has to be raised because he's raised. He's raised all the time. Oh, the Supreme Court said 20 years ago that it's not good to not say a word. Where a defense attorney doesn't say a word, that's very bad.  Cronick doesn't apply to Hattery. But what's the difference? What is the difference? What is the difference between hiring people? All in to pursue an invalid theory after you've admitted guilt. I mean, this is exactly that. Just because he's standing up and moving his lips doesn't mean he's holding the state to its burden or there's some sort of adversarial testing going on. Ms. Carrier, you're saying that it's per se ineffective assistance of counsel simply because he admitted guilt. I mean, that's what you're arguing. No, that's not at all. I'm arguing that here he admitted guilt to both offenses. You know, Johnson distinguishes Hattery on the fact that How is your argument not per se? I mean, the Supreme Court has already said that you can't make the argument that it is per se ineffective assistance of counsel because the defense counsel admits guilt. In this case, this defense lawyer did more than just basically stand up there and say, Well, my client committed armed robbery, but he didn't intend to kill anybody, albeit that they went to the robbery scene with a gun. So I think the foreseeability argument was tough anyway, but that may have been, you know, it really may have been the only argument he had. But tell me why you're not making it. You say you're not arguing per se, but it sounds like it to me. I'm not arguing per se. I'm saying in this case where you have defense counsel admitting to the offenses, launching an invalid defense to the offenses he's already admitted to, and the defendant didn't make a statement. I'm saying when you have those three things under the facts of this case, then Hattery and Kronick do apply. Well, you just mentioned Janssen a moment ago, and reading from Janssen, Claims of ineffective assistance of counsel may be disposed of on the ground that the defendant suffered no prejudice from the claimed errors without deciding the first prompt whether the errors were serious enough to constitute less than reasonably effective assistance. So by correctly conceding that this is an overwhelming case, you can approve prejudice. But Janssen talks about that after they decide that Hattery and Kronick don't apply. Then they go on to a Strickland analysis. I'm saying in this case can be decided based on Hattery and Kronick, and we never have to move on to a Strickland analysis, and no prejudice needs to be proved. Okay. Anything else? No, if there are no further questions. Thank you. Mr. Taffanetti. Good morning, Your Honor. My name is Bill Taffanetti. I'm an assistant state's attorney for Cook County. Simply put, defendant received the effective assistance of counsel. In order to demonstrate under Strickland that he did not, defendant in this case must show that counsel's strategy was unreasonable in the light of the facts and circumstances of this case. Defendant must show a reasonable probability also that had his attorney pursued another line of defense, there is a strong likelihood of acquittal. He cannot demonstrate either one of these. First of all, this is a Strickland case. This is not a Kronick-Hattery case. What separates the two is that under the Kronick-Hattery line, those cases require that counsel essentially acts as a proponent for the prosecution and entirely fails to subject the prosecution's case to meaningful adversarial testing. Mr. Taffanetti, as your opponent points out, given that the concession was made in the opening statement, that, yeah, my guy was guilty, committed armed robbery, went there to rob the people, and they actually did it, can there be meaningful adversarial testing after a statement like that? Yes. And the cases that follow the Strickland line, Gaines and Blumenberg and Nieves and that line of cases, all make that point that defense counsel is allowed to make concessions as to the lesser offenses in order to present a defense on the greater offense. And, in fact, in one of the cases, Nieves, I think, the defense that was put forward was mercy killing. Well, there's no mercy killing exception to first-degree murder. But the court found that because it gave a defense theory of innocence, of acquittal, to the jury, it was a strategy, it gave them a theory upon which they could base an acquittal, it was okay. And the same thing happens in this case. What defense counsel did in this case was to put forward a theory to the jury based upon evidence that the jury could take back to the jury room and discuss and talk about and reach a verdict of not guilty on first-degree murder, not based upon the law that they were instructed, but upon a theory of equity, that under the facts and circumstances of this case, it would not be justice to convict this defendant of first-degree murder. Even if he was guilty of the armed robbery. Now, this is up to the jury to make its decision. And the courts have said that although the jury does not have the right of nullification, it does have the power because there's no remedy for it. And it does have the power of lenity. And that's what defense counsel was asking the jury to do. And there is ample case law that says when the evidence is that overwhelming, that there really is no other way to defend the case. It is a perfectly reasonable thing to do. It is a long shot, no question. It may fail, no question. But that doesn't make it invalid as a matter of constitutional representation. Furthermore, defense counsel, under that stricken line of cases, defendant has to prove strong possibility, strong likelihood, that had counsel chosen another defense, there would have been an acquittal. Well, if you look at the evidence in this case, there is simply nothing else that could have been argued. Counsel says that there's no statement, and that's what separates this case from Yeves and Gaines and Shatner and that whole line. But in those cases, the defendants were not arrested on the scene in the process. They were arrested days later, sometimes weeks or months later. So a statement became very important to prove up identity, intent, the elements of defense. Here you have the defendant locked into the place, into the store. At times he was armed with a gun. He was caught or seen by the police trying to get out through a side door with the proceeds in his hand. He didn't run to the police and say, thank God you're here. I've been trying to withdraw. He muttered an expletive and ran back inside. I mean, what's defense counsel supposed to do with this evidence? Where is he going? Yes, he could subject, he could make the people prove the case beyond a reasonable doubt. But that's always a possibility. That's always an option. That's an option in Shatner. It's an option in Yeves. It's an option in Bloomberg. But it's not the only option, and it's not constitutionally mandated. If defense counsel can look at the evidence and put forward a theory to the jury, that the jury can take back and return a verdict based upon its estimation of what the equities are, of where justice would lie in this case. Does it matter that the trial court admonished the defendant? I'm sorry, Your Honor? Does it matter in this case that the trial court admonished the defendant, not defense counsel, but by the way your counsel is saying is guilty of the armed robbery, and that may be held against you when it comes time for the felony murder? The admonishment is required. It's constitutionally required under the chronic Hattery line, or the Hattery line of cases, where the defense counsel basically is jumping ahead to the sentencing and conceding guilt on the offenses in order to forestall, say, a capital sentence, something like that. It's not constitutionally required under a Strickland analysis. However, we do have that admonishment, and we do have defendants saying that he was aware of this, that he discussed it with counsel, and that he approved it. And if you look at the post-trial hearing, you had defense counsel, and this is a rarity, you had defense counsel laying out his whole strategy because he was subjected to an ineffective assistance of counsel attack. And he laid out exactly what he was trying to do, which was to gain the jury's, not sympathy, but to ask them to look at the facts of this case and decide that defendant was not responsible for the death, that he didn't cause the death, that it was the police act that caused the death and shot down an armed man. And based upon that, to return a verdict based on lenity and jury nullification. And under the Strickland line of cases that I've cited in my brief, that is perfectly permissible. There really is no reasonable option for defense counsel in this case to have done otherwise. And the fact that it didn't work is not positive in any way. So basically what you have is a defense attorney who did a vigorous job for his client, who took the facts as he found them and did the best he could. It didn't work, but it was an imaginative and honest attempt. What about Ms. Curry's response to the per se argument? She says that she's not making that argument, but it sounds like that to me. What do you think? If she's not making that argument, then she has to satisfy the prejudice prong. If she's making a per se argument, then she doesn't have to. But if she's not making one, then she has to satisfy the prejudice prong. And the per se argument only applies where there has been a complete abandonment of the defendant by his attorney to the tender mercies of the prosecution, where the defense counsel essentially changes sides. And you do not have that here. Here you have a strategy that defendant put forward based upon the facts. And in order to find ineffective assistance, the prejudice prong has to be satisfied. And the fact that it's not a per se claim means that defendant has to satisfy the notion that he would have been otherwise he would have been acquitted or a strong likelihood of acquittal. And he can't show either one of these. So I would ask the court to affirm defendant's conviction. Thank you. Thank you. Ms. Curry, briefly. The state's attorney pointed out or argued that defense counsel could always require the state to prove the elements beyond a reasonable doubt, but that's not the only option. I believe that that is the only option, and that is why defense counsel is ineffective in this case and that prejudice does not need to be shown. And I made a chart of all the cases. I'm happy to photocopy it for you, but I think that this is a case where you need to go and look at all of these cases relied on me and on the state and find the distinguishing factors. And in all these cases relied on by the state, defense counsel did not admit to every offense. And the defendant gave a statement. He didn't admit to every offense. For all intents and purposes, he admitted to every offense in this case. The defendant did not give a statement, and he launched an invalid offense. And in none of these cases that don't follow Hattery, that is not true. But in Hattery, that is true. There are two cases that follow Hattery. Wilson, and that stands for the proposition, or Woods, rather, the one that Woods' application cited from 1986, which stands for the proposition that if you're going to front your client's guilt, you have to advise them of it, which was done here after the fact. It probably was done at the time of the second verdict. That was not a very knowing and intelligent. But you don't argue that he violated your client's rights were violated by him not being advised of it, do you? You argue straight ineffective. Rather, you argue straight Hattery. I argue that Hattery is applicable, and the defendant did not consent to the strategy in this case. Okay, even though he said he did. He was asked after a lengthy discussion about jury nullification, which I would contend Mr. Woods did not understand. You were kind enough to put it in your brief. Are you okay with this strategy? Right, I said that this was not enough. Were you okay with this strategy? I mean, what does that even mean? Were you okay? There's no evidence that he knew that an admission to armed robbery was also an admission to felony murder or that the defense strategy that he was going to pursue was invalid. There's no evidence. I only noticed it right before that. I mean, if you look at page 8 of your brief, that's how this happened. It was brought up not when it occurred, but when a motion directed finding. Correct. And then the judge goes into it, well, listen, jury nullification isn't really a good defense, blah, blah, blah. He asked Mr. Woods, the defendant, if he knew the statement suggesting he was guilty of armed robbery but not murder would be made opening. Yeah, I knew that. I discussed the theory of defense with his attorney, and then I approved of the theory in the opening remarks. What more do you need? The questions were not that specific, and it was just based on. That's your brief. And I don't believe that the question was that specific. Okay. Thank you. There you go. Thank you, Ms. Kirk. This case will be taken under advisement.